DASHIELL

*v.*

MERCHANTS' & PLANTERS' SAV. BANK.

(*Supreme Court of Appeals of Virginia, May 2, 1895.*)

[22 S. E. Rep. 169.]

### Fraudulent Conveyances—Sufficiency of Evidence—Case at Bar.*

D. executed a note secured by trust deed, which at maturity was taken up by defendant, his brother, and defendant afterwards proceeded to sell the property under the trust deed to satisfy the note. Plaintiff claimed to succeed to D.'s interest in the land, through a conveyance from him made after maturity of the note, and alleged that D., or defendant, as his agent, paid the note; that D. had possession thereof, but defendant wrongfully obtained the same, and claimed to be the owner thereof. Plaintiff's one witness testified that D., at the time defendant took up his note, gave defendant checks to the amount of the note, and that defendant afterwards obtained possession of D.'s papers wrongfully. Defendant admitted receiving the checks from D., but testified that they were to be applied on D.'s past indebtedness to him, and that he was to take up the note, and hold the same, together with the right of lien, and that he had continuous possession of the note from the time he took it up. Defendant was partially corroborated by another witness. The note was not marked "Paid": *held*, that possession of the note being prima facie proof of ownership, and the burden of proof being on plaintiff to show that the note had been fraudulently obtained by defendant, the evidence was insufficient to sustain a decree for plaintiff.

Appeal from chancery court of Richmond; James C. Lamb, Chancellor.

*See monographic note on "Bills and Notes," Va. Rep. Anno.

Action by the Merchants' and Planters' Savings Bank against J. Parker Dashiell and another for possession of land, and to enjoin the sale thereof under a trust deed. From a decree for plaintiff, defendant Dashiell appeals. Reversed.

*Allen Potts* and *Leake & Carter*, for appellant.

*G. Carlton Jackson*, for appellee.

CARDWELL, J., delivered the opinion of the court.

By a deed dated May 27, 1890, and recorded in Chesterfield county clerk's office, J. H. Montague, H. A. Tabb, and W. L. Royall, trustees, conveyed to R. B. Taylor, trustee, a tract of 25¼ acres of land lying in Chesterfield county, adjoining the city of Manchester, in trust, to secure, among a number of other notes, the payment of a note for $662.50 drawn by W. S. Dashiell to his own order, and by him indorsed in blank, bearing even date with the trust deed, and payable 12 months after its date at the State Bank of Virginia, Richmond, Va. At the maturity of this note, on May 27, 1891, it was taken up by J. Parker Dashiell, appellant, with the check of Thomas Potts & Co., of which firm he was a member, and held by him until about the 18th of February, 1892, when he, as the holder of the note for value, as he claimed, required R. B. Taylor, the trustee in the deed securing the same, to proceed to advertise and sell the property in accordance with the provisions of the trust, whereupon the Merchants' & Planters' Savings Bank of Richmond, Va., filed its bill of complaint in the chancery court of Richmond against J. Parker Dashiell and R. B. Taylor, trustee, and obtained an injunction to restrain the trustee from advertising and selling the tract of land conveyed to him by the deed from Montague and others till the further order of the court, setting forth in its bill that W. S. Dashiell had, by deed dated on or about the 27th day of July, 1891, in consideration

of $1,800, conveyed to the bank all of his right, title, and interest in this tract of land, upon which the note in question, along with a number of others, was secured, and charging that at the maturity of this note, on the 27th of May, 1891, it was paid and satisfied by W. S. Dashiell, or by his agent, J. Parker Dashiell, who is his brother, and came into the possession of W. S. Dashiell, but that J. Parker Dashiell had wrongfully and tortiously obtained possession of the note, and was claiming and pretending to be the holder and owner of it. The answer of J. Parker Dashiell, duly filed, denies specifically every charge or allegation made by the complainant in its bill, and sets forth how he came into possession of the note, and that it had been in his possession ever since he took it up from the bank, and never in the possession of W. S. Dashiell, and claiming that respondent's possession of the note was by purchase for a valuable consideration, and that he in no manner obtained it wrongfully and tortiously. The answer of R. B. Taylor, trustee, was also filed, in which he admits the genuineness of the note, and it is secured by the deed of trust from Montague and others, in which he is named as trustee, but denies, so far as he is concerned, all charges of fraud in complainant's bill contained.

The complainant in the court below, to support the allegations of its bill, examined but one witness, C. D. M. Cobb,— a former partner of W. S. Dashiell, engaged in the real-estate business in the city of Richmond under the style or the firm name of Dashiell & Cobb,—and his testimony is to the effect that the check book of the firm of Dashiell & Cobb, as well as the checks returned to the firm as paid at bank, shows that a check was drawn May 27, 1891, on the Citizens' Bank of Richmond, to the order of J. P. Dashiell, for $400 ; another on the same bank, May 29, 1891, to the order of "Cash," for $262.50 ; that both checks were signed by the firm name, in the handwriting of W. S. Dashiell, and both indorsed, "for

deposit in the Merchants' National Bank, Richmond, Va., account of Thomas Potts & Co." (Merchants' National Bank, Richmond, Va.); that said checks were charged on the books of this firm to W. S. Dashiell ; that W. S. Dashiell kept his private papers in two tin boxes, which were delivered to Mr. Thomas Potts upon an order of J. Parker Dashiell, brother of W. S. Dashiell, and that, besides the two tin boxes, W. S. Dashiell had a private drawer in the safe of the firm, in which he kept some papers, and which drawer, at the request of J. Parker Dashiell, was opened in witness' presence after W. S. Dashiell left the city, in November, 1891 ; and that J. Parker Dashiell took charge of and carried away contents of the drawer. But witness was unable to state what papers were in the boxes or the drawer, with the exception of one note, which he noticed as they hurriedly went over the papers, and this was a note for $1,000, with the name of E. A. Coleman to it.    J. Parker Dashiell, testifying in his own behalf, stated that during the spring of 1891 he requested his brother, W. S. Dashiell, many times, to give him security for money he had advanced to him and paid for him, amounting to about $675 ; that a day or two before he paid the note in question, on May 27, 1891, in the State Bank, his brother said to him : "You pay this note and hold it.    It is a lien on real estate I purchased in Chesterfield, and will be first-class security for that amount of the debt, certainly ; and I will make you a payment of not less than the amount of the note on account of what I owe you,"—the witness agreeing to continue making monthly payments due by his brother, W. S. Dashiell, to the National Building Association; that on May 27, 1891, he took up the note in question from the State Bank, with the check of Thomas Potts & Co., and that some hours after he had taken it up, but on the same day, his brother, W. S. Dashiell, brought to witness' office, and handed to him, the two checks, the one for $400, dated May 27, 1891, and the other for $262.50, dated May 29, 1891, and distinctly stated that these checks were not to pay the note

for $662.50 that witness had taken up from bank, but were a payment on account, as he had before promised witness.   J. Parker Dashiell further testified that on taking up this note from the bank he put it among his private papers in the vault of his firm ; that it has never, since its maturity, been in the possession of W. S. Dashiell, nor had he even seen it. And this statement is corroborated by Thomas Potts, who testified that in looking over the bank checks of his firm, about June 1, 1891, he came across a check for the amount of this note, and asked J. Parker Dashiell about it, and was told by him that he used it to pay a note of W. S. Dashiell he could not pay, and took the note out of the vault, and offered it to him (Potts) as collateral for anything that he (J. Parker Dashiell) might owe the firm, but the note was put back in the vault, witness declining to take it. Witness Potts further testified that about a month before November 7, 1891, J. Parker Dashiell still had possession of this note.

Upon a hearing of the cause on the bill and the answers and the depositions of the witnesses referred to, the court below, on December 1, 1892, decreed that the note in question, for $662,50, has been fully paid off and discharged at the cost of said W. S. Dashiell, and that the plaintiff is entitled to possession of same, and further adjudged, ordered, and decreed that the clerk of the court withdraw said note from the papers in the cause, and deliver the same to the plaintiff, and that the injunction awarded the plaintiff on the 18th day of February, 1892, be made perpetual, and that J. Parker Dashiell, defendant, pay to the plaintiff the costs of its suit.   From this decree an appeal was allowed J. Parker Dashiell to this court.

After a most careful examination of the record we are unable to concur in the view taken of the case by the learned judge of the court below.   The possession of the note in question, not marked "Paid," was prima facie proof of its ownership in the holder, J. Parker Dashiell, appellant ; and the bur-

den was unquestionably upon the complainant in the lower court to prove that the holder of the note was wrongfully and tortiously in possession of it, as charged in the bill ; and the only testimony taken in support of the allegations of the bill is that of witness C. D. M. Cobb, which, at the most, raises but a bare suspicion that the note in question was in the possession of W. S. Dashiell after its maturity, and wrongfully obtained by J. Parker Dashiell from among the papers delivered by Cobb to him after W. S. Dashiell had left the city of Richmond ; but, even if such an inference could be rightfully drawn from Cobb's testimony and other circumstances, it would not be sufficient to sustain the allegations of the bill. Fraud is never presumed, but must always be proved, when charged, by clear and satisfactory evidence,—a rule of law too well established to require the citation of authority.   The efforts of the complainant in the court below to sustain the allegations of its bill, have been fully met by a full, frank, and, as we think, reasonable, statement on oath by appellant of all his transactions with his brother, W. S. Dashiell, in which he acquired title to the note in question ; and he is materially corroborated by the testimony of Thomas Potts, a disinterested witness.

It is contended, however, that the failure of J. Parker Dashiell to credit W. S. Dashiell with the two checks given by him May 27, 1891, in the account on which he obtained judgment in the circuit court of Richmond November 30, 1891, against W. S. Dashiell, for the sum of $1,338.70, is sufficient, together with the other testimony in the case, to justify the decree complained of, but we are unable to see the force of this contention.   While, according to the ordinary rules used in stating accounts, these checks should have been credited to W. S. Dashiell, the failure to do so does not, we think, affect at all the right of J. Parker Dashiell to the note in question ; and it also appears that the larger portion of the account sued on is made up of payments made by J. Parker Dashiell for account of W. S. Dashiell after the note was taken up, May 27,

1891, and if the note is realized, as J. Parker Dashiell states, the amount will have to be credited on his judgment. For the reasons stated, we are of opinion that there is error in the decree complained of, and the same must be reversed ; and this court will enter such decree as the court below should have entered, dissolving the injunction and dismissing complainant's bill, with costs to appellant.